UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

GEORGINA C. THOMSON and SHEILA CLARK,

                          Plaintiffs,

          v.

ODYSSEY HOUSE, VANCE HERBERT,
DARRIN BROWN, GAIL HARRISON and JOHN
DOES 1–10,

                          Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
14-CV-3857 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Georgina Thomson and Sheila Clark commenced the above-captioned action in the New York State Supreme Court, Kings County, in September of 2013, against Defendants Odyssey House, Vance Herbert, Darrin Brown, Gail Harrison[1] and John Does 1–10, alleging claims of discrimination, retaliation and hostile work environment on the basis of race, gender, sexual orientation and disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), and a claim for negligent infliction of emotional distress. On or about May 30, 2014, Plaintiffs amended their state court complaint to include federal claims pursuant to 42 U.S.C. § 1981. On June 20, 2014, Defendant Odyssey House removed the action to this Court. (Not. of Removal, Docket Entry No. 1.) Plaintiffs subsequently amended the complaint twice, adding claims for discrimination, retaliation and

---

     [1] Plaintiffs named "Gail Harrison" as a Defendant, but repeatedly refer to Gail Harris in their factual allegations. Neither Gail Harrison nor Gail Harris has appeared in this action. For the purposes of this Memorandum and Order, the Court assumes Harrison and Harris are the same individual, and hereinafter refers to the Defendant as "Harris."

hostile work environment brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Americans with Disabilities Act ("ADA"). Specifically, Thomson brings claims of discrimination under the ADA, Title VII, NYSHRL and NYCHRL, retaliation under Title VII, the ADA, Section 1981, NYSHRL and NYCHRL, and hostile work environment under Title VII, NYSHRL and NYCHRL. Clark brings claims of discrimination and hostile work environment under the NYSHRL, and retaliation under Section 1981 and the NYSHRL.

Odyssey House moves to dismiss the Third Amended Complaint ("TAC") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs' NYSHRL and NYCHRL claims that were presented to the New York State Division of Human Rights ("NYSDHR") are barred by the election of remedies provisions in those statutes, and that Plaintiffs otherwise fail to state a claim against Odyssey House.[2] (Mot. to Dismiss, Docket Entry No. 29; Def. Mem. in Support of Mot. to Dismiss ("Def. Mem."), Docket Entry No. 30.) For the reasons set forth below, the Court grants Odyssey House's motion to dismiss both Plaintiffs' NYSHRL claims and Thomson's Title VII, ADA, Section 1981 and NYCHRL claims, and denies Odyssey House's motion to dismiss Clark's Section 1981 claim. Plaintiffs' Title VII, ADA, NYSHRL and NYCHRL claims against Brown, Harris and Herbert ("Individual Defendants") are dismissed *sua sponte*. The Court orders Plaintiffs to show cause within thirty days of the date of this Memorandum and Order why Individual Defendants should not be dismissed from this action because of Plaintiffs' failure to serve them.

---

[2] In opposition, Plaintiffs moved to file a Fourth Amended Complaint. (Pl. Opp'n to Mot. to Dismiss ("Pl. Opp'n Mem."), Docket Entry No. 23.) By letter dated February 19, 2015, Plaintiffs withdrew the cross-motion to amend the TAC. (Docket Entry No. 36.) Thus, the Court denies Plaintiffs' motion to amend as withdrawn by Plaintiffs.

## I. Background

Odyssey House is a New York corporation whose business involves providing counseling to inmates in prison. (*See* TAC ¶¶ 4, 6, 8, 33, 57.) The Individual Defendants were employees of Odyssey House. (TAC ¶ 10.) Herbert worked with Plaintiffs, and Harris was Plaintiff Thomson's supervisor. (TAC ¶ 15.) Brown appears to have been in a position senior to both Plaintiffs, such that Plaintiffs addressed complaints about their working conditions to him. (TAC ¶¶ 21–26, 33–34, 56.)

### a. Thomson

Plaintiff Georgina Thomson was employed by Defendant Odyssey House from July of 2010 through April of 2014. (TAC ¶¶ 2, 11, 41.) Thomson served as an Intake Discharge Coordinator and counseled clients on behalf of Odyssey House. (TAC ¶¶ 4, 12.) Plaintiffs allege that Thomson was an "exemplary employee" and did not disobey orders or directives from supervisors. (TAC ¶ 13.)

#### i. Alleged sexual orientation and gender comments

Thomson is a lesbian and is open about her sexuality with her coworkers, which has "attracted a barrage of insults and 'jokes' from co-workers and supervisors alike," including the Individual Defendants. (TAC ¶¶ 14–15.) Defendant Brown asked Thomson on various occasions why she wore a blouse instead of a tie, which Thomson understood to be a remark about her sexuality, and on two occasions told her to wear her hair down to "look prettier." (TAC ¶ 24.) On "more than one occasion," someone[3] answered the telephone when Thomson's wife called and thereafter told Thomson that "her wife wanted to be with a real man." (TAC

---

[3] The allegations in the TAC are not clear, but it appears as though Herbert was the person who answered the telephone.

¶ 26.)  On or about June 12, 2011, Harris "made inappropriate comments" about an administrative assistant, and told Thomson to "stop flirting with" the assistant.  (TAC ¶ 17.)  On or about the same day, Harris also told Thomson "not to pick up" the assistant.  (*Id.*)  Plaintiffs allege that Thomson complained — though she does not specify to whom or about what — and was "marked for closer supervision by management."  (TAC ¶ 18.)  On or about August 4, 2011, Harris "complained" to an unspecified person about Thomson's work but not that of heterosexual employees, non-black employees, or "employers [*sic*] that had [not] complained about discrimination."  (*Id.*)

On August 2, 2011, Thomson informed Harris that Thomson's wife's nephew had been killed and that Thomson wanted to attend the funeral.  (TAC ¶ 35.)  Harris denied Thomson leave, despite the fact that heterosexual employees had been, in the past, given leave to attend funerals.  (TAC ¶¶ 35–36.)  Brown told Thomson he had only wanted to hire men because women "are too emotional."  (TAC ¶ 25.)

At some unspecified time, Thomson requested to work overtime and was denied the opportunity, although the same opportunity was offered to men.  (TAC ¶ 19.)

On August 5, 2011, Thomson asked Harris if she could "do a Treatment Plan,"[4] and was "laughed at" and "told that she was not like Herbert," a man, and that it "would take her 10 days to complete it," humiliating Thomson in front of her colleagues.  (TAC ¶ 20.)  Plaintiffs allege that this "happened often," and, on August 9, 2011, Harris again embarrassed Thomson in front of her coworkers.  (*Id.*)

### ii.  Complaints about treatment

On August 23, 2011, Thomson complained in writing "detailing prior complaints and

---

[4]  It is not clear from the TAC what "doing a Treatment Plan" entails.

new issues that had arisen," reminding her employers that she had complained about Harris's conduct since November 2010. (TAC ¶¶ 15–16.) Plaintiffs do not indicate to whom these complaints were made or give more detail about the contents of the complaints. At some point in time, Thomson also complained to Brown and Human Resources about Harris's racially-charged remarks to Clark. (TAC ¶¶ 29–31.) In a meeting held at an unspecified time as a result of Thomson's "letter on August 24, 2011,"[5] Thomson further complained that no action had been taken against Harris despite Thomson's repeated complaints. (TAC ¶ 22.) Defendant Brown, also present at the meeting, made excuses for Harris's conduct. (*Id.*) On August 29, 2011, Thomson wrote to Brown to complain about Harris's prior conduct and explained that she feared her job was in jeopardy. (TAC ¶ 21.) Brown did not take this or other complaints "seriously." (TAC ¶¶ 24, 26.)

### iii. Surgery and injury

At an unspecified time prior to July 26, 2011, Thomson had surgery on her breasts and was instructed not to work in a humid environment. (TAC ¶ 32.) Harris insisted that Thomson return to work on July 26, 2011 and that she worked in "the prison classrooms," which are humid. (TAC ¶ 33.) This caused inflammation and discomfort. (TAC ¶ 34.) Brown told her that if she was unable to "work in the heat, despite her doctor's orders, he had no use for her." (TAC ¶¶ 23, 34.)

Herbert frequently moved Thomson's chair out of the way or lowered the chair so that she would fall when she attempted to sit in it. (TAC ¶¶ 27–28.) On or about September 9, 2011, Thomson had another surgery, and returned to work on September 14, 2011. (TAC ¶¶ 37–38.)

---

[5] The TAC contains no allegations as to the contents of the August 24, 2011 letter or to whom the letter was addressed.

That day, Herbert moved Thomson's chair out from under her, causing Thomson to fall and reinjure her surgery site, necessitating several weeks of leave.[6] (TAC ¶¶ 39–40.)

### iv. NYSDHR complaint

On March 5, 2012, Thomson, proceeding *pro se*, filed a complaint against Defendants with the NYSDHR,[7] alleging retaliation and discrimination on the basis of creed, disability,

---

[6] Plaintiffs allege that Thomson needed only weeks of leave following her injury. (TAC ¶ 40 ("The injury kept [P]laintiff out of work for several weeks.").) However, it appears that Thomson may not have returned to work at Odyssey House following the injury. Plaintiffs allege that Thomson "planned to return to work when she was fully healed" and that she was kept "out of work for several weeks" (*id.*) — and do not provide additional facts except that Thomson "noted" at some unidentified time that she was interested in returning to work at Odyssey House, and was "let go" in April of 2014. (TAC ¶ 41.)

[7] The parties submit copies of Plaintiffs' NYSDHR complaints with their motion papers. (Exs. 1–2 annexed to Decl. of Nkereuwem Umoh ("Umoh Decl"), Docket Entry No. 24; Exs. B–C annexed to Mellk Aff.) Defendants also submit copies of the determinations issued by the NYSDHR, the right to sue notices issued from the EEOC following the NYSDHR's determination, Thomson's second filing with the EEOC, and the EEOC's notice of right to sue related to the second EEOC filing. (Exs. D–I annexed to Mellk Aff.) None of these documents are attached to the TAC, but the Court may consider the NYSDHR and EEOC complaints and related documents in evaluating Odyssey House's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See M.E.S. v. Snell*, 712 F.3d 666, 671 (2d. Cir. 2013); *Sanderson v. Horse Cave Theatre 76*, 881 F. Supp. 2d 493, 502 (S.D.N.Y. 2012).

However, in reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may only consider the plaintiff's "relevant filings with the EEOC and other documents related to the plaintiff's claim, even if they are not attached to the complaint, so long as those filings are either incorporated by reference or are integral to and solely relied upon by the complaint." *Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) (internal quotation marks and alterations omitted) (quoting *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 565–66 (2d Cir. 2006)); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (noting that on a Rule 12(b)(6) motion, a district court may consider documents attached to or incorporated by reference into the complaint, and documents where "the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint," if there is no dispute about the authenticity or accuracy of the document, and it is clear that the parties agree the document is relevant (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006))). Courts may also consider information subject to judicial notice. *Singh v. Wells*, 445 F. App'x 373, 375 (2d Cir. 2011) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008)).

marital status, race or color,[8] sex and sexual orientation, and of sexual harassment and other

harassment in violation of the NYSHRL, Title VII and the ADA. (Compl. dated 3/5/2012 in

Case No. 10153677 ("Thomson March 5, 2012 NYSDHR Compl.") at ECF No. 21, 24–25,

annexed to Aff. of Wendy J. Mellk in Support of Def. Mot. to Dismiss ("Mellk Aff.") as Ex. B.)

In her narrative, Thomson alleges substantially the same facts as described above. (*See id.* at

ECF No. 28–34.) Thomson's March 5, 2012 NYSDHR complaint was forwarded to the EEOC.

(*Id.* at ECF No. 21.) On August 31, 2012, the NYSDHR issued a determination that there was

no probable cause to believe Defendants engaged in the unlawful discriminatory practices of

which Thomson complained. (Determination and Order in Case No. 10153677, annexed to

Mellk Aff. as Ex. D.) On January 29, 2013, the EEOC adopted these findings and informed

---

Even though Plaintiffs do not attach the NYSDHR or EEOC documents to the TAC, and do not reference the relevant filings in the TAC, the Court reviews these documents as integral to the Complaint, as the Plaintiffs had access to these documents when framing the allegations in the TAC, the Plaintiffs' complaint depends, in part, on the scope and effect of these documents, and no party disputes the accuracy or relevance of the documents. *See Henriquez-Ford v. Council of Sch. Sup'rs & Adm'rs*, No. 14-CV-2496, 2015 WL 3867565, at *4 (S.D.N.Y. June 23, 2015) (considering EEOC notices of charge, NYSDHR complaint, and NYSDHR decision regarding complaint as integral to complaint); *Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.*, No. 12-CV-2285, 2014 WL 5822628, at *14 (E.D.N.Y. Nov. 6, 2014) (considering EEOC intake questionnaires and letters signed by the plaintiffs attached to them, EEOC charge and EEOC determination letter on motion to dismiss, as documents integral to the complaint). Moreover, the Court may take judicial notice of these administrative records to establish the fact of the proceedings and the outcome, but not for the truth of the matters within them. *Colvin v. State Univ. Coll. at Farmingdale*, No. 13-CV-3595, 2014 WL 2863224, at *16 (E.D.N.Y. June 19, 2014) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)), *reconsideration denied*, 2015 WL 2213297 (E.D.N.Y. May 8, 2015); *Volpe v. Nassau Cty.*, 915 F. Supp. 2d 284, 291 (E.D.N.Y. 2013) (noting a court may take judicial notice of NYSDHR complaint and decision to establish the fact of litigation or to "ascertain the legal nature of the claims brought in the actions" (internal quotation marks and citation omitted)); *cf. Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (finding NLRB charge subject to judicial notice).

[8] Thomson does not allege her race in the TAC, but her allegations suggest that she is African-American. (*See* TAC ¶ 18 (noting that Harris had not criticized non-homosexual employees, non-black employees, or employees who did not make complaints).)

Thomson of her right to sue. (EEOC Dismissal and Notice of Rights for Georgina C. Thomson dated January 29, 2013 ("January 29, 2013 Right to Sue Notice"), annexed to Mellk Aff. as Ex. F.)

### v. Refusal to allow Thomson to return to work

Thomson, who had not been working at Odyssey House for an unidentified period of time possibly stretching back to her injury in September of 2011, "noted interest" in returning to work, but Defendants refused to let her return and "let her go" in April of 2014 (the "April 2014 termination").[9] (TAC ¶ 41.)

On July 2, 2014, Thomson filed a charge of discrimination with the EEOC, alleging that Odyssey House discriminated against her on the basis of her race, sex, national origin and disability in violation of Title VII and the ADA, and retaliated against her for her complaints about discrimination. (Charge of Discrimination marked received July 2, 2014 ("July 2, 2014 EEOC Charge"), annexed to Mellk Aff. as Ex. H.) On September 12, 2014, the EEOC issued Thomson a Notice of Right to Sue. (Notice of Right to Sue dated September 12, 2014 ("September 12, 2014 Right to Sue Notice"), annexed to Mellk Aff. as Ex. I.)

### b. Plaintiff Clark

Plaintiff Sheila Clark was employed by Odyssey House from May 21, 2010 through February 14, 2012. (TAC ¶¶ 3, 46.) Clark served as a Counselor and counseled clients on behalf of Odyssey House. (TAC ¶ 6.) She is a "light skinned black woman." (TAC ¶ 47.)

On an unspecified occasion, Harris called Clark a "half breed." (TAC ¶ 29.) She frequently called Clark "mixed up" and told her that "blacks and Hispanics were mentally

---

[9] Although it is not clear that Plaintiff was working on Odyssey House and could be terminated, the Court assumes for the purposes of this motion that the event in April 2014 constituted a termination.

retarded because they weren't white." (TAC ¶ 30.) Thomson complained to Brown about these remarks. (TAC ¶¶ 29–31.)

Brown made sexual advances to Clark on "numerous occasions." (TAC ¶¶ 48, 52.) Brown "consistently asked for 'brown sugar,' or . . . 'white sugar'" from Clark. (TAC ¶ 54.) On an unspecified occasion, Brown told Clark to "close her blouse," that he was "still a man" and, referring to her breasts, that she was "killing him" with her "short blouse." (TAC ¶ 54.) At some unspecified time, Clark complained "to management" about Brown's comments. (TAC ¶¶ 48.) On November 3, 2011, Brown told Clark not to write "retaliatory letters," instructing her not to complain any more. (TAC ¶ 56.) In December of 2011, non-party Michael Cannaday placed his hand inside Clark's blouse and fondled her breast. (TAC ¶ 51.) Clark complained to management and "nothing was done." (*Id.*) On December 12, 2011, Clark discovered that Harris had searched her cubicle. (TAC ¶ 55.)

On February 14, 2012, Clark's employment was terminated, and she told that she had shown an "inappropriate" DVD to inmates. (TAC ¶¶ 46, 57.) Plaintiffs allege that Clark was terminated for her complaints, including complaints about sexual harassment. (TAC ¶¶ 51, 58.)

On March 5, 2012, Clark filed a complaint with the NYSDHR against Odyssey House, Harris and Brown, alleging discrimination on the basis of race, color and sex, and retaliation because she opposed discrimination, in violation of the NYSHRL and Title VII. (Compl. dated 3/5/2012 in Case No. 10153681 ("Clark NYSDHR Compl.") at ECF No. 37, annexed to Mellk Aff. as Ex. C.) Other than her termination[10] and mention of certain comments related to her

---

[10] In Clark's NYSDHR complaint, which was filed on March 5, 2012, she alleged that she was still employed. (Clark NYSDHR Compl. at ECF No. 41.) However, Clark's NYSDHR complaint — although filed on March 5, 2012 — is dated February 8, 2012, approximately one

race,[11] Clark presented the facts as described above.  (*Id.* at ECF No. 45–52.)  Clark's NYSDHR

Complaint was forwarded to the EEOC.  (*Id.* at ECF No. 37.)  On August 31, 2012, the

NYSDHR issued a determination that there was no probable cause to believe the Defendants

engaged in the unlawful discriminatory practices of which Clark complained.  (Determination

and Order in Case No. 10153681, annexed to Mellk Aff. as Ex. E.)  On January 20, 2013, the

EEOC adopted these findings and informed Clark of her right to sue.  (EEOC Dismissal and

Notice of Rights for Sheila Clark, dated January 29, 2013, annexed to Mellk Aff. as Ex. G.)

## II.  Discussion

### a.  Standards of review

#### i.  Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to

Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it . . . .'"

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015)

(quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718

F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635,

638 (2d Cir. 2005)).  A plaintiff asserting subject matter jurisdiction has the burden to prove that

it exists, and in evaluating whether the plaintiff has met that burden, "'[t]he court must take all

facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but

'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the

---

month before the NYSDHR complaint was filed and six days before she was terminated.  (*Id.* at
ECF No. 44.)

[11]  For example, Clark did not complain in the NYSDHR complaint that Harris had called
her a "half-breed."  However, the NYSDHR noted Thomson's complaint about this comment in
its Determination and Order in Clark's case.  (Determination and Order in Case No. 10153681 at
ECF No. 61, annexed to Mellk Aff. as Ex. E.)

pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010). A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010); *Morrison*, 547 F.3d at 170.

### ii.   Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Analyzing a motion to dismiss an employment discrimination claim requires reference to the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in which

the Supreme Court set forth a burden-shifting scheme which governs a plaintiff's ultimate burden of proof at trial. *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015) (discussing burden-shifting, citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253–55 (1981)). Under that framework, a plaintiff must first establish a *prima facie* case of discrimination. *Hicks*, 509 U.S. at 506; *see also Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11 (2d Cir. 2013); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). The plaintiff's burden at this stage is "minimal." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *Hicks*, 509 U.S. at 506). If plaintiff meets her burden at this stage, a "temporary presumption" of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Vega v. Hempstead Union Free Sch. Dist.*, --- F.3d ---, ---, 2015 WL 5127519, at *8–9 (2d Cir. Sept. 2, 2015). If the employer articulates a reason, the burden ultimately shifts back to the employee to show that the employer's reason was pretext. *Id.*

To survive a motion to dismiss, the plaintiff does not need to prove discrimination, or even allege facts establishing every element of the *McDonnell Douglas prima facie* case, but the facts alleged must give "plausible support to the reduced requirements" of the *prima facie* case. *Littlejohn*, 795 F.3d at 311; *see also Vega*, --- F.3d at ---, 2015 WL 5127519, at *9–10; *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (citing *Swierkiewicz v. Sorema,* 534 U.S. 506, 511 (2002))); *see also Awad v. City of New York*, No. 13-CV-5753, 2014 WL 1814114, at *2 (E.D.N.Y. May 7, 2014) (noting that the elements of a *prima facie* case provide an outline of

what would make a plaintiff's employment discrimination claim plausible). Thus, a plaintiff need only plead facts to give "plausible support" to plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims. *Vega*, --- F.3d at ---, 2015 WL 5127519, at *9–10 (quoting *Littlejohn*, 795 F.3d at 307, 311).

### b. Time-barred claims

Thomson brings several claims under Title VII and the ADA, alleging that she faced discrimination, retaliation, and a hostile work environment on the basis of her gender, race, national origin, and disability, and a failure to accommodate her disability. (TAC ¶¶ 73, 76, 78, 80.) Odyssey House argues that Thomson's claims under Title VII and the ADA are time-barred to the extent they rely on conduct occurring before September 5, 2013. (Def. Mem. 11, 18–20.) Odyssey House further asserts that Thomson's ADA claims and Title VII discrimination and hostile work environment claims based on facts raised in her March 5, 2012 NYSDHR complaint are time-barred because Plaintiff failed to bring suit on those claims within ninety days of receiving the EEOC January 29, 2013 Right to Sue Notice. (Def. Mem. 12 n.5, 18 n.6.) Thomson argues that Odyssey House's refusal to permit her to return to work was part of "continuous discrimination" against her, making her claim timely. (Pl. Opp'n Mem. 14.) For the reasons set forth below, the Court finds that Thomson's federal claims that accrued before September 5, 2013 are not timely.

Before filing a Title VII or ADA action in federal court, a plaintiff must timely file charges of employment discrimination with the EEOC. 42 U.S.C. §§ 2000e–5(a), (e); 42 U.S.C. § 12117 (incorporating procedures set forth in § 2000e–5); *Ayazi v. N.Y.C. Dep't of Educ.*, 586 F. App'x 600, 602 (2d Cir. 2014); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-

5); *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003); *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). A federal employment discrimination claim is time-barred unless the plaintiff first files an EEOC charge within 180 days of the alleged discrimination, or within 300 days if the plaintiff had already filed a charge with the state or local employment agency. 42 U.S.C. § 2000e-5(e)(1); *see also Vega*, --- F.3d at ---, 2015 WL 5127519, at *4 (quoting 42 U.S.C. § 2000e-5(e)(1)); *McGullam*, 609 F.3d at 75. This requirement is analogous to a statute of limitations. *Vega*, --- F.3d at ---, 2015 WL 5127519, at *4; *Patterson v. Cty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004). When a plaintiff is issued a notice of right to sue from the EEOC, she has 90 days from receipt[12] of that notice to file a lawsuit relating to those charges. *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011) (concerning limitations period for both Title VII and ADA actions); *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 598 (E.D.N.Y. 2013) (same).

Thomson filed two complaints with the EEOC, the first through the NYSDHR and the second directly with the EEOC, and was issued two notices of right to sue from the EEOC. Because the limitations periods apply differently to the claims raised in the two charges, the Court separately evaluates the causes of action raised in the two charges.

### i. Thomson's March 5, 2012 NYSDHR complaint

Thomson's March 5, 2012 NYSDHR complaint, concerning her treatment while she was actively working at Odyssey House, was cross-filed with the EEOC, (Thomson March 5, 2012 NYSDHR Compl. at ECF No. 21), and a notice of right to sue was mailed to her on January 29, 2013, (January 29, 2013 Right to Sue Notice at ECF No. 65). While the Court has no

---

[12] Receipt can be either by the plaintiff or plaintiff's counsel, and if both receive notice on different dates, the relevant date is the earlier of the two. *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011).

information as to when Thomson actually received the January 29, 2013 Right to Sue Notice, there is a presumption that the notice was mailed on the date shown on the notice, and a presumption that the mailed document was received three days later. *Tiberio*, 664 F.3d at 37. In the absence of allegations contradicting this presumption, the Court assumes that Thomson received the January 29, 2013 Right to Sue Notice on February 1, 2013. *See id.*; *see also Friedman v. Swiss Re Am. Holding Corp.*, 512 F. App'x 94, 96 (2d Cir. 2013); *Raeburn v. Dep't of Hous. Pres. & Dev.*, No. 10-CV-4818, 2015 WL 4016743, at *8 (E.D.N.Y. June 24, 2015) (citing *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525–26 (2d Cir. 1996)). Therefore, Thomson had until May 2, 2013 to file an action regarding the claims in her March 5, 2012 NYSDHR complaint. Plaintiffs brought this action in state court in September of 2013, three months after the ninety-day period expired.

In Thomson's March 5, 2012 NYSHDR complaint, she alleged, *inter alia*, that she was subject to discrimination and retaliation in violation of the ADA and Title VII on the basis of her disability, race, ethnicity, creed, and sex, and was subject to sexual harassment and other harassment.[13] (Thomson March 5, 2012 NYSDHR complaint at ECF No. 24–25.) Thomson claimed that she was subjected to discrimination on the basis of her disability when she was told that Odyssey House had "no use" for her when she needed to stay out of extreme heat after her surgery, and was subjected to discrimination on the basis of race and sex based on comments from Harris and Herbert. (*Id.* at ECF Nos. 24, 28.) She indicated on the form complaint that she was denied a promotion or pay raise, training, leave, and accommodations, was subjected to

---

[13] Thomson did not allege national origin discrimination in her March 5, 2012 NYSDHR complaint. (Thomson March 5, 2012 NYSDHR Complaint at ECF No. 24.) For the reasons discussed below, Thomson's current Title VII claims for national origin discrimination arising from conduct prior to September 5, 2013 would otherwise be barred by the 300-day limitations period, even if they were not barred by the 90-day limitations period.

harassment, and was given worse job duties and disciplinary notices.  (*Id.* at ECF Nos. 25, 28–33.)

These claims are time-barred because Thomson failed to bring suit within ninety days of receiving the January 29, 2013 Right to Sue Notice, has not proffered any reason for failing to do so, and has not presented any facts to justify equitable tolling.[14]  *See Tibero*, 664 F.3d at 37–38 (holding that claim was time-barred when suit was filed 93 days after receiving right-to-sue notice); *Zerilli-Edelglass*, 333 F.3d at 78, 81 (noting claim was untimely when suit was filed 96 days after right-to-sue letter was received); *Stevenson v. N.Y. Dep't of Corr.*, 489 F. App'x 517, 517–18 (2d Cir. 2012) (finding ADA claim time-barred when plaintiff failed to show that she timely filed the suit and failed to demonstrate a basis for equitable tolling); *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 350 (E.D.N.Y. 2013) (dismissing ADA claim filed eighteen months after right to sue letter was issued); *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 157–58 (E.D.N.Y. 2010) (dismissing ADA claims as time-barred when they were not filed within 90 days of receipt of right-to-sue notice and plaintiff failed to show a basis for equitable tolling); *see*

---

[14]  Plaintiffs do not appear to dispute Defendant's contention that Thomson's ADA, Title VII hostile work environment and discrimination claims that were presented to the EEOC in Thomson's March 5, 2012 NYSDHR complaint are time-barred for this reason, but argue instead that because of (1) the merits of Thomson's ADA claims, (2) the continuing violation exception, which is discussed below, and (3) the fact that Thomson was terminated after the filing of this action in state court, the Court should decide the merits of the case.  (Pl. Opp'n 8–11, 14.)  As discussed *infra* part II.b.ii.1, the continuing violation exception does not apply to revive Thomson's claims.  Furthermore, even if it did, "the First, Sixth, Seventh and Tenth Circuits as well as several district courts have found that a plaintiff may not rely on the continuing violation theory to revive" claims barred by the ninety-day limitations period.  *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 207 (E.D.N.Y. 2014) (collecting cases); *see also Shoemake v. Mansfield City Sch. Dist. Bd. of Educ.*, 61 F. Supp. 3d 704, 725 (N.D. Ohio 2014) (noting the Sixth Circuit has held that the doctrine "does not relieve a plaintiff of the need to file an action within 90 days of receiving the right to sue letter." (quoting *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 461 (6th Cir. 2001))); *Simmons v. Tarrant Cty. 9-1-1 Dist.*, No. 13-CV-1389, 2014 WL 3720417, at *6 (N.D. Tex. July 22, 2014) (noting that Fifth Circuit has not definitively decided the issue, but finding that the doctrine would not toll the ninety-day limitations period).

*also Kantor-Hopkins v. Cyberzone Health Club*, No. 06-CV-643, 2007 WL 2687665, at *7

(E.D.N.Y. Sept. 10, 2007) (noting plaintiff's *pro se* status is not a basis for equitable tolling);

*McFarland v. Metro-N. Commuter R.R.*, 993 F. Supp. 210, 211 (S.D.N.Y. 1998) (same).  The

Court grants Odyssey House's motion as to Thomson's Title VII and ADA claims raised to the

EEOC in March of 2012, and dismisses these claims.

### ii.  Thomson's July 2, 2014 EEOC charge

Thomson filed her second EEOC charge on July 2, 2014, concerning her April 2014

termination.  (July 2, 2014 EEOC Charge at ECF Nos. 72–73.)  Thomson was issued a notice of

right to sue on September 12, 2014, while this action was pending.  (September 12, 2014 Right

to Sue Notice at ECF No. 75.)  The 300-day period covered by the July 2, 2014 EEOC Charge

extends back to September 5, 2013.  The effect of this limitations period depends on the type of

claim the plaintiff brings.  *See McGullam*, 609 F.3d at 75 ("When . . . a plaintiff's allegations of

discrimination extend beyond the 300-day limitations period, the nature of the claim determines

what consideration will be given to the earlier conduct." (quoting *Petrosino v. Bell Atl.*, 385 F.3d

210, 220 (2d Cir. 2004))).

### 1.  Discrimination and retaliation

"With respect to claims based on termination, failure to promote, denial of transfer, or

refusal to hire, section 2000e-5(e)(1) precludes recovery for *discrete* acts of discrimination or

retaliation that occur outside the statutory time period, even if other acts of discrimination

occurred within the statutory time period."  *Id.* (citations and internal quotation marks omitted);

*see Valtchev v. City of New York*, 400 F. App'x 586, 588 (2d Cir. 2010) ("Termination, failure to

promote, and refusal to hire are considered 'discrete acts' which are 'easy to identify' and claims

[under Title VII, the ADA and the ADEA] based on each are barred if not timely filed.");

*Petrosino*, 385 F.3d at 220 ("Other Title VII claims, such as those for termination or failure to promote, are based on 'discrete acts,' each giving rise to a separate cause of action."); *Benjamin v. Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 146, 153 (E.D.N.Y. 2005) ("It is well-settled that alleged adverse employment practices such as failure to promote, failure to compensate adequately, undesirable work transfers, and denial of preferred job assignments are considered discrete acts."). "Recovery for discrete acts of discrimination that occur outside of the applicable limitations period is precluded, even if the acts are related to acts alleged in timely filed charges." *Lukasiewicz-Kruk v. Greenpoint YMCA*, 404 F. App'x 519, 520 (2d Cir. 2010) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); *see also Vega*, --- F.3d at ---, 2015 WL 5127519, at *4 (noting claims based on identifiable discrete discriminatory acts are time-barred if they occurred outside the limitations period). A wrongful termination claim accrues on the date the parties understand the termination to be final. *Arias-Mieses v. CSX Transp., Inc.*, 630 F. Supp. 2d 328, 332 (S.D.N.Y. 2009) (citing *Morgan*, 536 U.S. at 110); *see also Andrews v. Fremantlemedia, N.A., Inc.*, --- F. App'x ---, 2015 WL 4998064, at *1 (2d Cir. Aug. 24, 2015) (noting discrimination claim generally accrues at the time of discriminatory act).

Plaintiffs contend that the April 2014 termination and refusal to help Thomson determine a reasonable accommodation for her alleged disability were retaliatory and discriminatory actions. (Pl. Opp'n Mem. 12–14.) Though the complaint is not clear as to when Thomson noted her interest in returning to work at Odyssey House, Thomson pleaded that she was "let go" in April of 2014, indicating that is the date she understood her termination to be final. *See Arias-Mieses*, 630 F. Supp. 2d at 322; *see also Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 851 (2d Cir. 2013) (finding failure to accommodate disability is a discrete act). Because April of 2014 is within the 300-day window, claims arising from the April 2014 termination are timely.

In her EEOC charge, Thomson alleges that she believed that the refusal to permit her to return to work after she had filed "claims" of gender, sexual orientation, race and national original discrimination, was discriminatory and retaliatory.[15] (July 2, 2014 EEOC Charge at ECF No. 72.) In her EEOC charge, Thomson references various comments from the Individual Defendants regarding Plaintiff's sexuality and gender, which comments were also referenced in Thomson's March 5, 2012 NYSDHR complaint. (*Id.*) In the TAC, Thomson indicates her belief that she was terminated because she complained about discrimination against herself and Clark, and because Odyssey House viewed her as disabled. (TAC ¶ 42.) Thomson argues that the claims based on the Individual Defendants' actions are not time-barred because they were a part of a series of "continuous discriminatory practices" which culminated in her termination. (Pl. Opp'n Mem. 14.)

Under the "continuing violation" exception to the 300-day limitations period, if a "plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (alteration omitted); *Jackson v. N.Y. Office of Mental Health*, No 11-CV-7832, 2012 WL 5862741, at *2 (S.D.N.Y. Nov. 15, 2012) ("The continuing violation exception makes violations that took place prior to the expiration of the statute of limitations actionable if they are part of a 'continuous policy and practice of discrimination' and at least one act in that policy and practice took place within the limitations period." (quoting *Fitzgerald v.*

---

[15] The July 2, 2014 EEOC charge indicates that the April 2014 termination occurred in March of 2014. As the TAC conflicts with this allegation, and the precise timing of the refusal to permit Thomson to return to work is not material for determining the timeliness of her claim, the Court will refer to the event as the "April 2014 termination."

*Henderson*, 251 F.3d 345, 359 (2d Cir. 2001))). The "existence of a discriminatory policy or mechanism" is "required under the continuing violation theory." *Lukasiewicz-Kruk*, 404 F. App'x at 520. However, the continuing violations doctrine does not permit a plaintiff to bring untimely claims for freestanding discrete acts of discrimination or retaliatory actions, such as a failure to promote or termination, even if they are "related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Ramlal-Nankoe v. Ithaca Coll.*, 591 F. App'x 23, 25 (2d Cir. 2015) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." (quoting *Morgan*, 536 U.S. at 114)); *Chin*, 685 F.3d at 155–56 (discussing *Morgan*). "Discrete acts . . . which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin*, 685 F.3d at 157.

Plaintiffs have not alleged the "existence of a discriminatory policy or mechanism" as "required under the continuing violation theory," *Lukasiewicz-Kruk*, 404 F. App'x at 520, and Thomson has not pointed to any discriminatory policy or pattern to which she was subjected. Furthermore, Thomson has alleged very little concerning the April 2014 termination — only that she noted her interest in returning at an unidentified time and was "let go," and her conclusory allegations that she was terminated for discriminatory reasons and subjected to continuing discrimination. *See, e.g.*, *Deras v. Metropolitan Transp. Auth.*, No. 11-CV-5912, 2013 WL 1193000, at *7 (E.D.N.Y. Mar. 22, 2013) (finding that the plaintiff's conclusory allegations were insufficient to trigger the continuing violation doctrine); *Askew v. New York*, No. 09-CV-553, 2013 WL 450165, at *7 (N.D.N.Y. Feb. 6, 2013) (holding that plaintiff's arguments and conclusory allegations were insufficient to "warrant application of the continuing violation

doctrine"); *Kenney v. N.Y.C. Dep't of Educ.*, No. 06-CV-5770, 2007 WL 3084876, at*5

(S.D.N.Y. Oct. 22, 2007) ("[Plaintiff's] conclusory allegations that she has suffered from a

continuing practice of discrimination by the DOE, without more, are insufficient to trigger a

continuing violation exception to the 300-day statute of limitations."). Therefore, even if the

discrimination and retaliation claims arising out of conduct in 2011 were not barred by the

ninety-day limitations period, Thomson cannot bring claims against Odyssey House for these

alleged adverse actions occurring prior to September 5, 2013, the start of the 300-day limitations

period.[16]

However, the allegations concerning the time-barred period may be relevant and are

admissible as "background evidence" for the timely claims. *Chin*, 685 F.3d at 145; *McGullam*,

609 F.3d at 86 (Calabresi, J., concurring); *Ferraro v. N.Y.C. Dep't of Educ.*, No. 13-CV-5837,

2015 WL 1476392, at *2 (E.D.N.Y. Mar. 31, 2015) (order adopting report and recommendation);

*Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 208 (E.D.N.Y. 2014) (citing *Davidson v.*

*LaGrange Fire Dist.*, 523 F. App'x 838, 839 (2d Cir. 2013)).

## 2. Hostile work environment

Hostile work environment claims are "different in kind from discrete acts" since "[t]heir

very nature involves repeated conduct," and "[t]he 'unlawful employment practice' therefore

cannot be said to occur on any particular day." *McGullam*, 609 F.3d at 75. "Accordingly,

consideration of the entire scope of a hostile work environment claim, including behavior alleged

---

[16] Moreover, Thomson could not simply revive the time-barred claims, on which she chose not to sue, by bringing the same allegations of discrimination in her second EEOC charge. *See Melie v. EVCI/TCI Coll. Admin.*, 374 F. App'x 150, 152 (2d Cir. 2010) (finding that "all of [plaintiff's] discrimination and retaliation claims . . . were time-barred, except for the one claim presented in [plaintiff's] February 27, 2007 Equal Employment Opportunity Commission ("EEOC") charge not previously presented in his September 25, 2006 EEOC charge." (citing *Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986) (per curiam))).

outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* (citation and internal quotation marks omitted). However, actions outside the limitations period must be sufficiently similar in kind to those within the relevant time period such that the events constitute the "same" hostile work environment. *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) (holding that even facially-neutral incidents must be considered in determining whether a hostile work environment exists under Title VII); *McGullam*, 609 F.3d at 77; *see also Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) ("[I]ncidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination — for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not.").

Thomson alleges that she actively worked at Odyssey House until her injury on September 14, 2011, remained out of work for an unspecified period of time, and that Odyssey House refused to let her return in April of 2014. She alleges no facts regarding her interaction with Odyssey House between September 2011 and April 2014, except her "noted" interest in returning to work there, and has not alleged any specific hostile act contributing to a hostile work environment in the 300 days prior to the July 2, 2014 EEOC charge. Although the April 2014 termination did occur in that time, termination is a discrete act that is not part of her hostile work environment claim. *Brown v. N.Y.C. Dep't of Educ.*, 513 F. App'x 89, 91 (2d Cir. 2013) ("The letter notifying Brown of her termination cannot save her hostile work environment claim, because her termination was a separate and discrete act."); *Patterson v. Cty. of Oneida*, 375 F.3d at 220 ("[T]he mere fact that an employee was dismissed within the statutory period cannot be used to pull in[to the statutory period] a time-barred discriminatory act . . . " (alteration and

internal quotation marks omitted)); *Butler v. Coca-Cola Refreshments USA, Inc.*, No. 12-CV-1791, 2013 WL 3324995, at *3 (E.D.N.Y. July 1, 2013) ("An employee's termination is the paradigmatic 'discrete act' that cannot be part of a hostile work environment claim."). Furthermore, to the extent Thomson is attempting to revive her time-barred claims by arguing that the conduct outside the limitations period provides a relevant lens through which Defendant's timely actions should be analyzed, the Second Circuit has indicated that conduct outside the limitations period is relevant in a hostile work environment claim only to the extent it is related to later conduct. *See Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 92 (2d Cir. 2014) (finding no evidence that plaintiff's reassignment to day shift was related to earlier instances of harassment or based on her sex, and thus reassignment could not render a claim based on earlier, pre-limitations period, conduct timely). There is no indication here that Thomson's limited interaction with Odyssey House after the relevant limitations period began on September 5, 2013 — when she noted her interest in returning to work and was refused — was related to the comments or treatment Thomson experienced prior to that date. The statute of limitations therefore bars consideration of Thomson's hostile work environment claim against Odyssey House.

### c. Election of remedies doctrine

Thomson alleges discrimination, hostile work environment and retaliation in violation of the NYSHRL on the basis of color, gender, race and disability, (TAC ¶ 71), and in violation of the NYCHRL on the basis of sexual orientation, gender and race, (TAC ¶¶ 60, 62). She also alleges discrimination and retaliation on the basis of disability in violation of the NYCHRL. (TAC ¶¶ 66–68, 70.) Clark alleges discrimination, hostile work environment, and retaliation in violation of the NYSHRL on the basis of color, gender, race and race identity. (TAC ¶¶ 63, 65.)

Odyssey House argues that all of Plaintiffs' claims under the NYSHRL and NYCHRL are barred by the election of remedies provisions in those statutes to the extent Plaintiffs rely on conduct that occurred prior to March 5, 2012, the date both Plaintiffs filed NYSDHR complaints. (Def. Mem. 10–11.)  Odyssey House argues that Plaintiffs presented their claims to the NYSDHR, thereby electing to proceed in the administrative process and precluding this federal lawsuit.  (*Id.*)  Plaintiffs claim that their suit should not be barred because (1) they appeared *pro se* in the NYSDHR proceedings and could not raise all of their arguments effectively, and (2) their complaints to the NYSDHR and allegations in this action are not based on the same grievances, particularly with regards to Thomson's April 2014 termination.  (Pl. Opp'n Mem. 7–8.)

Under both the NYSHRL and the NYCHRL, an individual who files a complaint with the NYSDHR is jurisdictionally barred from filing a lawsuit in state or federal court for the same claims.  *See* N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8–502(a); *Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013); *York v. Ass'n of the Bar*, 286 F.3d 122, 127 (2d Cir. 2002); *see also DuBois v. Macy's Retail Holdings, Inc.*, 533 F. App'x 40, 41 (2d Cir. 2013) ("Furthermore, the election of remedies doctrine under both the [NYSHRL] and [NYCHRL] precludes a plaintiff from pursuing his discrimination claims in a court of law when the same claims were previously brought before a local administrative agency." (citing N.Y. Exec. Law § 297(9) and N.Y.C. Admin. Code § 8–502)).  "The election of remedies bar also precludes consideration of any claim — whether brought under the NYSHRL or the NYCHRL — arising out of the same incident on which [the plaintiff's] [NY]SDHR complaint was based." *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 188 (S.D.N.Y. 2011) (citing, *inter alia*, *Emil v. Dewey*, 49 N.Y.2d 968, 969 (1980))).  Courts have interpreted "same claim" as meaning claims arising

out of the "same incident on which plaintiff's SDHR complaint was based [i.e.,] . . . if they are based on the same operative events." *Williams v. City of New York*, 916 F. Supp. 2d 517, 521 (S.D.N.Y. 2013) (alteration omitted) (quoting *Higgins*, 836 F. Supp. 2d at 188–89; *see, e.g.*, *Yong Chul Son v. Chu Cha Lee*, 559 F. App'x 81, 82 (2d Cir. 2014) (affirming dismissal of NYSHRL and NYCHRL claims when NYSDHR had reviewed NYSHRL and Title VII claims on same facts); *Carroll v. U.P.S.*, No. 00-CV-7032, 2000 WL 1185583, at *3 (2d Cir. Aug. 21, 2000) ("Because [plaintiff's] two sets of claims arise out of the same group of facts, the matter before this court is jurisdictionally barred."); *Jones-Kahn v. Westbury Bd. of Educ.-Westbury Union Free Sch. Dist.*, No. 13-CV-7144, 2015 WL 1529839, at *12 (E.D.N.Y. Mar. 31, 2015) (dismissing NYSHRL claims under election of remedies doctrine when claims arose from substantially the same set of facts, even though plaintiff provided additional facts in the complaint to flesh out her allegations). "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6)." *Higgins*, 836 F. Supp. 2d at 187 (citing *Moodie v. Federal Reserve Bank*, 58 F.3d 879, 882 (2d Cir. 1995)).

The parties agree that to the extent Thomson alleges that she was wrongfully terminated in violation of the NYSHRL and NYCHRL, the wrongful termination claims are not barred because the April 2014 termination occurred after Thomson filed her March 5, 2012 NYSDHR complaint. However, under the election of remedies doctrine, the Court lacks jurisdiction over Thomson's NYSHRL discrimination and retaliation claims arising from events pre-dating her March 5, 2012 NYSDHR complaint, Thomson's NYSHRL hostile work environment claim, and all of Clark's NYSHRL claims, as the claims investigated by the NYSDHR arise out of the same

events as the NYSHRL claims alleged in this action.[17]  *See Jones-Kahn*, 2015 WL 1529839, at

\*12; *Williams*, 916 F. Supp. at 521–22.  Furthermore, Thomson's NYCHRL discrimination and

retaliation claims arising from events pre-dating her March 5, 2012 NYSDHR complaint and her

NYCHRL hostile work environment claim are barred because they are based on the same

incidents as those presented to the NYSDHR.  *Clemmer v. Fordham Bedford Cmty. Servs.*, No.

14-CV-2343, 2015 WL 273657, at \*5 (S.D.N.Y. Jan. 16, 2015) (finding both NYCHRL and

NYSHRL claims of disability discrimination precluded by election of remedies doctrine when

plaintiff presented to the NYSDHR a claim of discrimination under the NYSHRL based on the

same allegations); *Williams*, 916 F. Supp. at 520–23 (finding NYCHRL and NYSHRL claims

barred although plaintiff had only filed with NYSDHR claims of discrimination under the

NYSHRL); *Higgins*, 836 F. Supp. 2d at 188–89 (applying election of remedies bar to both

NYSHRL and NYCHRL claims arising out of incident described in NYSDHR complaint).

Finally, neither exception to this jurisdictional bar — that the NYSDHR complaint was

dismissed for administrative convenience, or that the complaint was only filed with the

NYSDHR after it was filed with the EEOC pursuant to the duty-sharing rules, *see Jackson v.

N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 225 (S.D.N.Y. 2010) — applies.  Accordingly, the

NYSHRL and NYCHRL claims based on the facts alleged in Thomson's and Clark's March 5,

2012 NYSDHR complaints are dismissed for lack of jurisdiction.

The Court now turns to the merits of Plaintiffs' remaining claims against Odyssey House:

---

[17]  Although Clark did not specifically allege that she was terminated in violation of the
NYSHRL in her NYSDHR complaint, (*see generally* Clark NYSDHR Compl.), it appears that
Clark completed the form complaint before she was terminated, (*see id.* at ECF No. 41 (stating
that Clark was currently working for Odyssey House)).  However, the NYSDHR Determination
and Order After Investigation reflects that Clark was terminated.  (Determination and Order in
Case No. 10153681 at 3.)  Thus, the Court infers that the facts surrounding Clark's termination
were presented to the NYSDHR.

Thomson's hostile work environment claims under Title VII and the NYSHRL; Thomson's race, and gender discrimination claims under Title VII and the NYSHRL, color discrimination under the NYSHRL and national origin discrimination claim under Title VII; Thomson's disability discrimination claims under the ADA, NYSHRL and NYCHRL; Clark's Section 1981 retaliation claim and Thomson's retaliation claims under the ADA, Title VII, Section 1981 and the NYSHRL;[18] and Thomson's discrimination, hostile work environment and retaliation claims under the NYCHRL.

### d. Thomson's Title VII and NYSHRL hostile work environment claim

Thomson alleges a Title VII hostile work environment claim on the basis of gender, race and national origin, and a NYSHRL hostile work environment claim on the basis of color, disability, gender and race. (TAC ¶¶ 71, 78.) Odyssey House contends that because Thomson did not work for Odyssey House after September 2011, and because her claims arising from earlier conduct are barred, Thomson has not sufficiently pleaded a hostile work environment claim. (Def. Mem. 19, 21–22.)

"The standards for evaluating hostile work environment . . . claims are identical under Title VII and the NYSHRL." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2011). To plead that she was subjected to a hostile work environment in violation of Title VII, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*,

---

[18] As discussed above, Thomson's Title VII and ADA claims are time-barred to the extent the alleged conduct occurred prior to September 5, 2013, and her NYSHRL and NYCHRL claims are jurisdictionally barred to the extent the facts were presented to the NYSDHR. The only remaining allegations in the TAC concern Thomson's April 2014 termination, but she appears to pursue all of her claims based on those allegations.

795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Moll*, 760 F.3d at 203. "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).

The only allegation as to Thomson's interactions with Odyssey House after she left work in September 2011 is that at some unspecified time, Thomson "noted interest" in returning to work and Odyssey House "refused to return her to work and let her go on or about April 2014." (TAC ¶ 41.) Plaintiffs have alleged no other facts as to Thomson's interaction with Odyssey House between September 2011 and the April 2014 termination, and the stated allegations are insufficient to support a claim of hostile work environment. *See Brown*, 513 F. App'x at 91; *De La Peña v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 402 (E.D.N.Y. 2013) (noting that issuance of termination letter was not grounds for a hostile work environment claim), *aff'd*, 552 F. App'x 98 (2d Cir. 2014). Thomson has not made any specific allegations as to any conduct by Odyssey House between September 2011 and April 2014 other than noting her interest in returning to work but being "let go," which was not severe enough to create an abusive working environment on any of the grounds that Thomson alleges. *See Dechberry v. N.Y.C. Fire Dep't*, No. 14-CV-2130, 2015 WL 4878460, at *10 (E.D.N.Y. Aug. 14, 2015) (dismissing hostile work environment claim because plaintiff failed to do more than make conclusory allegations and pointed to no specific conduct); *Mullins v. Consol. Edison Co. of N.Y., Inc.*, No. 13-CV-6800, 2015 WL 4503648, at *12 (S.D.N.Y. July 22, 2015) (noting that, while one encounter can constitute a hostile work environment if it is severe, "as a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed

pervasive" (quoting *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004))); *see also Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (noting a "mild, isolated" incident does not make a workplace hostile (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000))). As a result, her Title VII and NYSHRL hostile work environment claims are dismissed as to Odyssey House.

### e. Thomson's Title VII and NYSHRL discrimination claims

Thomson claims that she was discriminated against in violation of Title VII on the basis of gender, race and national origin, and in violation of the NYSHRL on the basis of color, disability,[19] gender and race. (TAC ¶ 76). Odyssey House contends that Thomson has not alleged any facts that would lead to the plausible inference that her gender, national origin, race or color was related to the decision to "let her go" in April of 2014. (Def. Mem. 21–22.)

A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against [her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision," which can be shown "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, --- F.3d at ---, 2015 WL 5127519, at *11–12. In other words, "absent direct evidence of discrimination," to survive a motion to dismiss a claim of employment discrimination in violation of Title VII, a plaintiff must plausibly allege facts that *would support a finding* that she suffered an adverse employment action and "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311; *Dechberry*, 2015 WL 4878460, at *14. As with hostile work environment claims, claims of discrimination under the NYSHRL are analyzed under the same

---

[19] Thomson's NYSHRL disability discrimination claim is addressed below.

standard as a Title VII claim. *Vargas v. Morgan Stanley*, 438 F. App'x 7, 9 (2d Cir. 2011) (analyzing Title VII, Section 1981 and NYSHRL discrimination claims under the same standard); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305, 305 n.3 (2004) (commenting that Title VII and the NYSHRL have the same standard for recovery and similar statutory language, and are therefore analyzed according to the same standards).

Here, the only disputed question is whether Thomson has pleaded the "minimal" facts necessary to show that her sex, race or national origin was a motivating factor in her April 2014 termination. (*See* Def. Mem. 19.) As there is no direct evidence of discrimination, the Court looks to whether the allegations support a "plausible inference of discrimination." *See Vega*, --- F.3d at ---, 2015 WL 5127519, at *12.

Whether facts give rise to a plausible inference of discrimination "is a 'flexible [standard] that can be satisfied differently in differing factual scenarios.'" *Howard v. MTA Metro-N. Commuter R.R.*, 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir.1996)); *see also Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at *6 (same). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Remarks made by coworkers may also be probative of discriminatory intent, depending on the particular circumstances under which the comment was made. *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (outlining four factors district courts in this circuit routinely consider in

evaluating the probative value of such remarks, including (1) the identity and position of the individual making the remark, (2) the timing of the remark in relation to the employment decision, (3) the content of the remark, and (4) the context in which it was made); *Mesias v. Cravath, Swaine & Moore LLP*, --- F. Supp. 3d ---, 2015 WL 2069419, at *6 (S.D.N.Y. May 4, 2015) ("Remarks may raise an inference of discrimination if there is a nexus between the remarks and an adverse employment decision." (citing *Zhang v. Barr Labs., Inc.*, No. 98-CV-5717, 2000 WL 565185, at *4 (S.D.N.Y. May 8, 2000))).

Thomson's only allegations are that she "noted" that she wished to return to work at some unspecified time following her leave of absence and, in April of 2014, Odyssey House "let her go." Plaintiffs present no allegations that Thomson was replaced by another employee of another gender, race or national origin, c*f. Littlejohn*, 795 F.3d at 313 (allegation that plaintiff was replaced by white employee with less experience when plaintiff was demoted was more than sufficient to satisfy pleading requirements of disparate treatment claim under Title VII), or that she was treated differently from similarly-situated individuals with respect to her termination.

Furthermore, while Plaintiffs have alleged that Thomson was subject to criticism from Harris and Brown and that Thomson heard several derogatory comments directed at her and other black women, there is no indication that these comments — made in 2011 — were related to the April 2014 termination. *See Mesias*, --- F. Supp. 3d at ---, 2015 WL 2069419, at *6 (finding plaintiff failed to sufficiently allege a gender and age discrimination claim based on two remarks made by plaintiff's supervisor a year and a half and three months, respectively, before plaintiff was fired); *Haggood v. Rubin & Rothman, LLC*, No. 14-CV-34L, 2014 WL 6473527, at *9 (E.D.N.Y. Nov. 17, 2014) (dismissing race discrimination claims premised on "racially offensive and discriminatory" comments made by coworkers on four occasions over thirty-three

month period ending more than one year prior to the adverse employment action); *see also Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (finding plaintiff failed to state a Title VII gender discrimination claim because she failed to allege the named defendants subjected her to an adverse employment action, and alleged no facts from which gender-based motivation could be inferred). Plaintiffs also do not allege in the TAC that the Individual Defendants, who made the comments in 2011, before Thomson's leave of absence, were employed in the same capacity at Odyssey House in April of 2014 or had anything to do with the decision to "let [Thomson] go." *Cf. Rose v. N.Y.C. Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (finding that discriminatory remarks were probative of discriminatory animus when made by plaintiff's "immediate supervisor, who had enormous influence in the decision-making process"); *Awad*, 2014 WL 1814114, at *4 (finding allegations that supervisor and decision-maker made a number of discriminatory remarks about plaintiff were sufficient to show discriminatory intent prong of *prima facie* case). Plaintiffs' failure to set forth allegations regarding Thomson's April 2014 termination from Odyssey House cannot support Thomson's claim that she was "let [] go" because of her race, gender, or national origin.

### f. Disability discrimination

#### i. ADA claims

Thomson alleges that Defendants discriminated and retaliated[20] against her on the basis of her disability in violation of the ADA, and failed to accommodate her disability. (TAC ¶ 73.) Thomson contends that she was severely disabled, and, in opposition to the motion, presents new facts regarding the severity of her September 2011 injury which were not alleged in the TAC. (Pl. Opp'n Mem. 8–11.) Plaintiffs also contend that Thomson was only required to plead that

---

[20] The Court address's Thomson's ADA retaliation claim *infra* part II.g.

Defendants did not engage in an interactive process to determine what accommodations would be appropriate for her disability, or that she was otherwise not granted a reasonable accommodation. (*Id.* at 10–11.)

Odyssey House contends that Thomson has not sufficiently alleged that she suffered from a disability within the scope of the ADA or that Odyssey House regarded her as disabled and took any adverse action because of that perception. (Def. Mem. 12, 14–15; Def. Reply Mem. 4–5.) Odyssey House further contends that Plaintiff has not stated a failure to accommodate claim because she does not allege that she requested an accommodation or was denied any particular accommodation, and that a two-and-a-half year leave of absence is not a reasonable accommodation under the ADA. (*Id.* at 13–14.)

### 1. Wrongful termination

Under the ADA, covered employers cannot "discriminate against a qualified individual on the basis of disability" with regard to employment decisions. 42 U.S.C. § 12112. Under the *McDonnell Douglas* burden-shifting framework, to establish a *prima facie* case of discrimination under the ADA, a plaintiff must allege that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010) (citations omitted); *see also Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 48–49 (2d Cir. 2014) (quoting *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013)) (outlining *prima facie* test under the ADA).

As with Title VII discrimination claims, while a plaintiff need not specifically plead each

and every element of a prima facie case of discrimination to survive a motion to dismiss, the standard provides a framework for analyzing whether the plaintiff's claims for relief are plausible. *Dechberry*, 2015 WL 4878460, at *16. Applying the analysis employed in Title VII discrimination claims by the Second Circuit, to survive a motion to dismiss, a plaintiff must allege facts that show (1) the employer took adverse action against her, and (2) the action was taken *because of* her disability or perceived disability. *See Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir. 2015) ("In order to establish a prima facie case of employment discrimination under the ADA or the Rehabilitation Act, a plaintiff must adequately plead that he was terminated because of a qualifying disability."); *Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) ("To state a claim for discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, inter alia, that she 'suffered [an] adverse employment action because of [her] disability.'" (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)); *cf. Vega*, --- F.3d at ---, 2015 WL 5127519, at *12.

For substantially the same reasons as discussed above, Thomson has failed to present any allegations that would give rise to the inference that her alleged disability or perceived disability played a motivating role[21] in her April 2014 termination from Odyssey House. While Thomson

---

[21] The question of whether a plaintiff need only show that her disability was a "motivating factor" in the adverse action, as in Title VII cases, or whether she must show that it was the "but-for" cause of the adverse action, like in ADEA cases, is an open question in the Second Circuit. *DeAngelo v. Yellowbook Inc.*, --- F. Supp. 3d ---, ---, 2015 WL 1915641, at *7 (D. Conn. Apr. 27, 2015); *Sherman v. Cty. of Suffolk*, 71 F. Supp. 3d 332, 348 (E.D.N.Y. 2014) (quoting *Castro v. City of New York*, 24 F. Supp. 3d 250, 269 n.34 (E.D.N.Y. 2014)); *see also Vega v. Hempstead Union Free Sch. Dist.*, --- F.3d ---, ---, 2015 WL 5127519, at *11 (2d Cir. Sept. 2, 2015*)* (noting that a plaintiff alleging age discrimination must allege that age was the but-for cause of the adverse action). Because the Court concludes that Thomson has failed to plead facts to support an inference of discrimination under the more forgiving "motivating factor" standard, the Court concludes that if Thomson was required to ultimately prove that

alleged that Harris sent her to work in a humid environment, despite her work restriction and that Brown made a disrespectful comment regarding her work restriction in July of 2011, and that Herbert potentially caused her further injury in September of 2011, nothing connects these actions to Odyssey House's decision to "let her go" nearly three years later. *See Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25–26 (2d Cir. 2011) (upholding dismissal of ADA claim on grounds plaintiff failed to allege discriminatory animus, when only allegations relating to discrimination were remarks of unidentified human resources officer, which ultimately did not "suggest that the employer's decision to alter Perry's duties was motivated by assumptions or attitudes regarding the abilities of persons" with her disability); *Jordan*, 928 F. Supp. 2d at 608 (finding "virtually no connection" between disability and termination when plaintiff was discharged several years after being scolded for incorrectly taking worker's compensation instead of disability leave). Plaintiffs rely on the single conclusory allegation that Odyssey House refused to permit Thomson to return in April of 2014 because it perceived her as disabled, which alone cannot sustain a "plausible" claim for discrimination.

Furthermore, Plaintiffs have not alleged facts explaining the nature of Thomson's impairment which would show that she had a disability or perceived disability on which Odyssey House could have discriminated against her at the time of the April 2014 termination. *See Giambattista*, 584 F. App'x at 25 (noting that because plaintiff did not allege she had a disability, she was required to "raise a reasonable inference" that her employer discriminated against her because she was perceived to have a disability). "The ADA Amendment Act of 2008 ('ADAAA') defines 'disability' as: (A) a physical or mental impairment that substantially limits

---

disability was the "but for" cause of the April 2014 separation, her allegations would likewise be insufficient to withstand a motion to dismiss.

one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Dechberry*, 2015 WL 4878460, at *16 (citing 42 U.S.C. § 12102(1)); *see also Sherman v. Cty. of Suffolk*, 71 F. Supp. 3d 332, 345 (E.D.N.Y. 2014). While an impairment need not "prevent, or significantly or severely restrict" the plaintiff from engaging in a major life activity to constitute a disability, "not every impairment will constitute a disability" within the meaning of the ADA. 29 C.F.R. § 1630.2(j)(1)(ii); *Anderson v. Nat'l Grid, PLC*, --- F. Supp. 3d ---, 2015 WL 1323977, at *12 (E.D.N.Y. Mar. 25, 2015).

A plaintiff may be *regarded* as having a disability "whether or not the impairment limits or is perceived to limit a major life activity." *Jordan*, 928 F. Supp. 2d at 606. But, "[a]n individual cannot be regarded as disabled under the ADA where the impairment is transitory and minor. A transitory impairment is defined as 'an impairment with an actual or expected duration of [six] months or less.'" *Hernandez v. Int'l Shoppes, LLC*, --- F. Supp. 3d ---, 2015 WL 1858997, at *14 (E.D.N.Y. Apr. 23, 2015) (alteration in original) (quoting 42 U.S.C. § 12102(3)(B)), *appeal dismissed* (June 18, 2015); *Llano v. N.Y.C. Health & Hosps. Corp.*, No. 13-CV-5820, 2014 WL 1302654, at *1 (S.D.N.Y. Mar. 31, 2014).

Plaintiffs allege that Thomson's condition was severe enough to warrant hospitalization, and that the injury to a surgery site on her breast necessitated "several weeks" of leave in September of 2011.[22] (*See* TAC ¶¶ 39–40.) The TAC is devoid of facts which would suggest that the impairment limited a major life activity after those weeks of leave, or that any Odyssey House employee believed that Thomson's impairment constituted anything more than a

---

[22] Plaintiffs now argue in opposition to the motion to dismiss the TAC that Thomson's two and a half year absence from Odyssey House was related to her September 2011 injury. (Pl. Opp'n 8–11.) However, those facts were not included in the TAC and cannot be considered on this motion to dismiss. Moreover, Plaintiffs' argument is specifically contradicted by the allegation in the TAC that Thomson required only weeks of leave to heal. (*See* TAC ¶ 40.)

transitory or minor injury necessitating only weeks of leave, as Thomson herself alleged. *See Shaughnessy v. Xerox Corp.*, No. 12-CV-6158, 2015 WL 1431687, at *3 (W.D.N.Y. Mar. 27, 2015) (finding ankle sprain which permitted plaintiff to return to work after approximately one month was not a disability within the meaning of the ADA); *Graham v. Macy's Inc.*, No. 14-CV-3192, 2015 WL 1413643, at *3 (S.D.N.Y. Mar. 23, 2015) (dismissing ADA claims based on bipolar disorder when complaint failed to explain how disorder limited plaintiff's major life activities); *Llano*, 2014 WL 1302654, at *2 (finding plaintiff failed to adequately allege that she was disabled or perceived as disabled under the ADA when she alleged that she experienced nausea and unidentified "complications," failed to alleged that they limited a major life activity, and failed to allege that it was more than minor or was perceived to last more than six months); *Mastrio v. Eurest Servs., Inc.*, No. 13-CV-00564, 2014 WL 840229, at *6 (D. Conn. Mar. 4, 2014) (dismissing ADA discrimination claim because plaintiff failed to allege he suffered a limitation of major life activities during month he was recovering from kidney stone operation); *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 408–09 (E.D.N.Y. 2010) (dismissing ADA claim because plaintiff failed to allege substantial limitation, was cleared to return to work within two months, and did not set forth facts showing that defendants regarded her as disabled). Because Thomson has failed to allege facts that could show she had a disability or was perceived as having a disability, or that the April 2014 termination occurred because of her disability, Thomson's ADA discrimination claim against Odyssey House is dismissed.

### 2. Failure to accommodate

Failure to accommodate is a type of disability discrimination that also follows the *McDonnell Douglas* burden-shifting scheme. In order to establish a prima facie case for failure to accommodate, a plaintiff must show that (1) she is a person with a disability under the

meaning of the ADA, (2) her employer is a covered entity, (3) the plaintiff could perform the essential functions of her job with an accommodation, and (4) the defendant refused to make such an accommodation. *McMillan*, 711 F.3d at 125–26 (quoting *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009)). Assuming, *arguendo*, that Thomson suffered from a disability within the meaning of the ADA, Plaintiffs do not allege when, if ever, Thomson notified Odyssey House of her disability or sought any kind of accommodation other than noting her interest in returning to work. This single allegation cannot give rise to a plausible inference that Odyssey House failed to accommodate Thomson's disability. *See Graham*, 2015 WL 1413643 at *4; *Ray v. Weit*, No. 13-CV-6416, 2015 WL 1299198, at *6 (E.D.N.Y. Mar. 20, 2015); *Jordan*, 928 F. Supp. 2d at 609 (dismissing failure to accommodate claim because plaintiff "merely assert[ed] that she was terminated based on her disability several years after she informed defendant of her diagnosis"). The Court therefore dismisses Thomson's failure to accommodate claim against Odyssey House.

### ii. NYSHRL and NYCHRL disability discrimination claims

Thomson similarly brings claims for wrongful termination on the basis of disability and failure to accommodate under the NYCHRL and NYSHRL. (TAC ¶¶ 66–68, 71.) Odyssey House argues that Thomson failed to plead facts to show that she was disabled under the terms of the NYSHRL or the NYCHRL, that she requested an accommodation, or that it failed to participate in an interactive process to determine whether a reasonable accommodation was available for her purported disability. (Def. Mem. 23–24.)

Thomson has not alleged that she suffered from discrimination on the basis of her disability within the meaning of the NYSHRL or NYCHRL. The elements to find disability discrimination under the NYSHRL and NYCHRL generally track the ADA. *Kinneary*, 601 F.3d

at 158; *Pagan v. Morrisania Neighborhood Family Health Ctr.*, No. 12-CV-9047, 2014 WL 464787, at *6 (S.D.N.Y. Jan. 22, 2014) ("The elements that apply to an ADA claim apply to claims under the NYSHRL and NYCHRL as well."). "However, the NYSHRL provides broader protection than the ADA, and the NYCHRL is broader still." *Pagan*, 2014 WL 464787, at *6; *see also Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247, 2013 WL 1232355, at *14 (E.D.N.Y. Mar. 26, 2013). The NYSHRL and NYCHRL "have a broader definition of 'disability' than does the ADA; neither statute requires any showing that the disability substantially limits a major life activity." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 541 (S.D.N.Y. 2009) (citing *Giordano*, 274 F.3d at 753). Despite the broader scope of the NYSHRL and NYCHRL, even if Thomson did allege facts to show that she was disabled within the terms of those statutes, for the reasons discussed above, the record is still devoid of facts connecting the April 2014 termination to any discriminatory motivation on the part of Odyssey House. Therefore, Thomson's disability discrimination claims against Odyssey House under the NYSHRL and NYCHRL are dismissed.

### iii. NYSHRL and NYCHRL failure to accommodate claim

Thomson's failure to accommodate claim also deserves separate analysis under the NYSHRL and NYCHRL to the extent Thomson argues that Odyssey House failed to engage in an interactive process regarding reasonable accommodations for her alleged disability. The NYSHRL and the NYCHRL require that an employer engage a disabled employee in a good-faith interactive process to identify what reasonable accommodations are appropriate. *Noel v. BNY-Mellon Corp.*, 514 F. App'x 9, 10 (2d Cir. 2013) (citing *Romanello v. Intesa Sanpaolo S.p.A.*, 949 N.Y.S.2d 345, 348 (App. Div. 2012)). "New York courts have held that the failure to engage in an interactive process is itself a violation of the law and gives rise to an independent

claim." *Stuart v. T-Mobile USA, Inc.*, No. 14-CV-4252, 2015 WL 4760184, at *9 (S.D.N.Y. Aug. 12, 2015) (collecting cases). However, the initial burden of requesting an accommodation is on the employee unless the disability is "obvious or otherwise known to the employer without notice from the employee." *Simmons v. N.Y.C. Transit Auth.*, No. 02-CV-1575, 2008 WL 2788755, at *5 (E.D.N.Y. July 17, 2008) (quoting *Felix v. N.Y.C. Transit Auth.*, 154 F. Supp. 2d 640, 657 (S.D.N.Y. 2001)) *aff'd*, 340 F. App'x 24 (2d Cir. 2009).

As discussed above, Plaintiffs have not alleged that Thomson requested an accommodation or otherwise attempted to initiate the "interactive process" except for "not[ing]" her interest in returning to work at Odyssey House. Furthermore, the TAC does not specify the nature of Thomson's disability or provide any facts on which the Court could infer that Odyssey House knew that Thomson had a disability or was otherwise obligated to initiate the process itself. For these reasons and those discussed above in part II.f.ii, Thomson's NYCHRL and NYSHRL failure to accommodate claims against Odyssey House are dismissed.

> **g.  Retaliation claims under the ADA, Title VII, Section 1981, and NYSHRL**

Clark claims that she was retaliated against for complaints protected by Section 1981, and Thomson claims she was retaliated against for activity protected by Title VII, the ADA, Section 1981 and the NYSHRL.[23]  (TAC ¶¶ 71, 74, 80.)  All four statutes contain similar anti-retaliation provisions, analyzed under the *McDonnell Douglas* burden-shifting framework. *See Littlejohn*,

---

[23]  Odyssey House contends that Plaintiffs' Section 1981 claims relating to national origin discrimination must be dismissed because Section 1981 covers only race-based discrimination. (Def. Mem. 15.) The Supreme Court has concluded that Section 1981 protects against discrimination on the basis of ancestry or ethnic characteristics, but not "solely on the place or nation of [ ] origin . . . ." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). However, "courts have also recognized that race and national origin discrimination claims may substantially overlap or even be indistinguishable depending on the specific facts of a case," as national origin may be intertwined with racial and ethnic characteristics. *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003).

795 F.3d at 315 (Title VII and § 1981); *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006)) (NYSHRL and Title VII); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (ADA).  To establish a *prima facie* case of retaliation, Plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

As with other claims analyzed under the *McDonnell Douglas* framework, the allegations need only give "plausible support to the reduced prima facie requirements . . . ." *Id.*  "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated — or took an adverse employment action — against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega*, --- F.3d at ---, 2015 WL 5127519, at *14.  In the retaliation context, the allegations must support the conclusion that the adverse action "would not have occurred in the absence of the retaliatory motive."  *Id.* at *15 (quoting *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).

### i.  Clark's claim

Odyssey House contends that Clark cannot state a claim for retaliation under Section 1981 because she does not allege that she engaged in activity protected by Section 1981, and that she only alleged that she complained about sex-related conduct.  (Def. Mem. 16; Def. Reply Mem 6–7.)  Odyssey House further contends that Plaintiffs do not allege that Clark was subject to adverse action because of any protected activity, and instead only alleges that she was terminated for complaining about sexual harassment.  (Def. Mem. 16.)  Plaintiffs argue that

Clark engaged in protected activity when she complained about behavior that had both racial and sexual overtones, and add that Clark's cubicle was searched, she was told not to write retaliatory letters, and she was ultimately terminated.[24]  (Pl. Opp'n Mem.11–12.)

## 1. Opposing unlawful employment practice

Section 1981 claims of retaliation in employment are analyzed pursuant to Title VII principles.  *Hicks*, 593 F.3d at 164.  To show that she engaged in protected activity under Title VII, a plaintiff can show she either opposed discrimination, or made a charge or participated in a Title VII investigation or proceedings.  *Id.*  To show protected activity in having opposed discrimination, a plaintiff need not allege that she opposed conduct that actually violated the law, but only that she "possessed a good faith, reasonable belief that the underlying employment practice was unlawful under the statute." *Summa*, 708 F.3d at 126 (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)).  Traditionally, complaints, whether formal or informal, are considered protected activity in retaliation claims.  *Id.* ("The law protects employees [who] . . . make[ ] informal protests of discrimination, including making complaints to management, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." (alteration in original) (quoting *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001))); *see also Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 650 (2d Cir. 2011) ("protected activities include 'the filing of formal charges . . . as well [as] informal protests of discriminatory employment practices'" (alterations

---

[24]  Plaintiffs now allege in their motion papers that these acts were discriminatory, but they did not raise a Section 1981 discrimination claim in the TAC, only a retaliation claim.  (*See* TAC ¶ 74 ("In violation of Section 1981, the defendants retaliated against plaintiffs for complaining about the treatment they received on the basis of their race and national origin.").)  The Court therefore does not address Plaintiffs' argument as to discrimination in violation of Section 1981, since no such claim is before the Court.

in original) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 208–09 (2d Cir. 1990))).

Plaintiffs allege that Clark suffered comments about her race in *addition to* sexual advances, including questions "about what race she was and what race she favored," (TAC ¶ 53) and requests for "brown sugar" or "white sugar," (TAC ¶ 54). Plaintiffs generically allege that she "complained" about the remarks. (TAC ¶ 55.) While the TAC is not a picture of clarity as to the contents of Clark's complaints, the allegations as pleaded are sufficient to provide plausible support for Clark's contention that she engaged in protected activity by complaining about racially-charged derogatory remarks in the workplace. Additionally, Clark alleges that Brown, a supervisor at Odyssey House, had knowledge of her complaints as he advised her not to file further complaints. (TAC ¶ 56.)

### 2. Adverse employment action

In the retaliation context, an adverse employment action is one which a reasonable employee would find materially adverse, meaning it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, --- F.3d at ---, 2015 WL 5127519, at *15 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (same); *Hicks*, 593 F.3d at 165 (same). In evaluating whether an action is materially adverse, "'[c]ontext matters,' as some actions may take on more or less significance depending on the context." *Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 568 (2d Cir. 2011); *see also Hicks*, 593 F.3d at 165 (noting that even minor acts that would be immaterial in some situations may be material in others).

The parties do not dispute that Clark's termination constituted an adverse employment action. Plaintiffs also assert that Clark had her cubicle searched and was told not to write "retaliatory letters" as a result of her complaints. (Pl. Opp'n Mem. 11–12; TAC ¶¶ 55–56.) It is

unclear whether Plaintiffs intend to assert that these actions were independent retaliatory actions, or rather use these occurrences as context to show that Clark's termination was causally connected to her complaints. As for Harris' search of Clark's cubicle while Clark was away, the facts as alleged fail to illustrate the significance of this event, and the Court therefore cannot conclude that it was independently retaliatory. *See Augustine v. Cornell Univ.*, No. 14-CV-7807, 2015 WL 3740077, at *5 (finding allegations that "a fly trap was placed on [plaintiff's] file cabinet and that a logbook was removed from her desk" were "plainly insufficient" to show adverse action for retaliation claim). As for Brown's warning, a disciplinary warning letter may constitute an adverse action in the retaliation context. *See Fahmy v. Duane Reade, Inc.*, No. 04-CV-1798, 2006 WL 1582084, at *10 (S.D.N.Y. June 9, 2006). However, the allegations seem to indicate that the warning was merely "advi[ce]" and not intended as discipline, reprimand or a threat thereof, (TAC ¶ 56), and thus the Court cannot conclude that it was "materially adverse."

### 3. Causal connection

A causal connection in retaliation claims can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *see also Vega*, --- F.3d at ---, 2015 WL 5127519, at *15 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." (citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) and *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010))); *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 23 (2d Cir. 2015) ("Ordinarily, causation may be inferred from close

temporal proximity."). There is no bright line rule concerning the temporal proximity required to draw the causal inference. *See, e.g.*, *Gorzynski*, 596 F.3d at 110–11 ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship."); *Smith v. Town of Hempstead Dept. of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 457 (E.D.N.Y. 2011) ("With regard to the establishment of a *prima facie* case through temporal proximity, the Second Circuit has not drawn a bright line as to how closely an adverse employment action must follow protected activity to imply that retaliation has taken place." (citing *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009))).

Plaintiffs specifically allege that Clark "was terminated for complaining about sexual harassment," in late 2011, (TAC ¶ 51), though they later allege that she was terminated for her complaints more generally, (TAC ¶ 58). As discussed above, the Court construes Clark's allegation regarding her complaints about sexual harassment as including those sexually-related remarks with racial overtones. Clark was terminated in February of 2012, "two months" after making her various complaints.[25] (TAC ¶¶ 57–58.) The close temporal proximity between the complaints and Clark's termination is sufficient to meet her minimal burden at this stage of the litigation. *See Smith*, 798 F. Supp. 2d at 457 (finding that three and a half month gap between protected activity and adverse action sufficient to satisfy temporal proximity requirement). Furthermore, Clark's supervisor Brown told her not to complain about her treatment, which may further support an inference of retaliatory animus. *See Gregory v. Daly*, 243 F.3d 687, 701 (2d

---

[25] The allegations indicate that Clark lodged complaints in November and December of 2011. (TAC ¶¶ 51–56.)

Cir. 2001) (finding that supervisor's statement that plaintiff "should 'get on board or quit,'" and "sneering comments" about plaintiff's lawsuit supported inference of retaliatory animus). Clark has adequately alleged a Section 1981 retaliation claim and Odyssey House's motion to dismiss this claim is denied.

### ii. Thomson's claims

Odyssey House argues that Thomson's retaliation claims must be dismissed because her allegations regarding her internal complaints are vague, she has not alleged adverse action beyond the April 2014 termination, and she has failed to plead facts to show that the April 2014 termination was causally related to Thomson's earlier complaints.[26] (Def. Mem. 16–17, 20–22.) Thomson alleges that her complaints led Odyssey House to refuse her request to return to work and ultimately led to her termination.[27] (Pl. Opp'n Mem. 12–13, 15–16.) Thomson also argues, only in her motion papers, that the April 2014 termination was a result of her filing her March 5, 2012 NYSDHR complaint and this action in Kings County Supreme Court in September of 2013. (*Id.* at 13, 15.) Odyssey House argues that contention that Thomson's termination was in retaliation for filing the March 5, 2012 NYSDHR complaint or this action was not raised in the TAC and must be disregarded. (Def. Reply Mem. 7–8.)

As for Thomson's theory that the April 2014 termination was triggered by her complaints

---

[26] Odyssey House also argues that Thomson's retaliation and discrimination claims under the ADA should be dismissed. (Def. Mem. 11.) Odyssey House does not dwell on the merits of Thomson's ADA retaliation claim in its memorandum of law, but the Court addresses them in this section.

[27] The parties appear to agree that the April 2014 termination — including the refusal to permit Thomson to return to work and the ultimate decision to "let her go" — is the only "adverse action" Thomson claims was retaliatory. (*See* Def. Mem. 17–18; Pl. Opp'n 13–14.) The Court accepts that there is no dispute, for the purposes of the instant motion, that the April 2014 separation constituted an adverse action.

of discrimination made internally to Odyssey House in 2011, her complaints are too far removed from the April 2014 termination to permit Thomson to rely on temporal proximity to establish a causal connection, and she has proffered no other evidence of a causal connection in support of any of her retaliation claims. *See Nicastro v. N.Y.C. Dep't of Design & Const.*, 125 F. App'x 357, 358 (2d Cir. 2005) (suggesting that 10 months was not sufficiently close to "demonstrate a causal nexus"); *see also DiBrino v. Dep't of Veterans Affairs*, 118 F. App'x 533, 535 (2d Cir. 2004) ("It makes logical sense that if an employer wishes to retaliate by firing an employee, he is likely to do so soon after the event." (quoting *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 384 (2d Cir. 2003))).

Thomson cannot rely on her theories that her termination was retaliation for filing the March 5, 2012 NYSDHR complaint or for filing this action in September of 2013, because those facts and theories were not raised in the TAC. "[A] claim for relief may not be amended by the briefs in opposition to a motion to dismiss." *Kamanou v. Exec. Sec. of Comm'n of the Econ. Cmty. of W. African States*, No. 10-CV-7286, 2012 WL 868700, at *2 n.2 (S.D.N.Y. Mar. 14, 2012) (quoting *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, No. 01-CV-5518, 2003 WL 1751785, at *13 (S.D.N.Y. Apr. 2, 2003)). Plaintiffs have amended the complaint three times since Thomson's April 2014 termination, and failed to include these theories of relief in any of their three amendments. Furthermore, Plaintiffs withdrew their request to further amend the TAC. Plaintiffs cannot circumvent the pleading process by asserting new theories of liability in opposition to the motion to dismiss. *Rodman v. Stryker Sales Corp.*, No. 14-CV-1102, 2014 WL 5002095, at *2 (S.D.N.Y. Oct. 7, 2014) (quoting *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F.Supp.2d 197, 209 n.8 (S.D.N.Y.2013)), *aff'd*, 604 F. App'x 81 (2d Cir. 2015). Because Thomson has failed to allege in the TAC a viable

theory which would give rise to the inference of retaliatory intent, the Court grants Odyssey House's motion to dismiss Thomson's Title VII, ADA and Section 1981 retaliation claims.

### h. NYCHRL discrimination, hostile work environment and retaliation claims

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citations omitted). Even under the more liberal standard imposed by the NYCHRL, Thomson's NYHCRL claims that she was subject to a hostile work environment and wrongfully terminated due to discrimination on the basis of her sexual orientation, gender, and race and disability, or in retaliation for her complaints about discrimination on the same grounds, (TAC ¶¶ 60, 62, 66–68, 70), also fail to state a claim.

### i. Discrimination

"To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive . . . ." *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (citing *Mihalik*, 715 F.3d at 114). However, even under this more liberal pleading standard, a plaintiff must plausibly allege that she was subjected to unequal treatment because of her protected characteristic. *See Mathew v. N. Shore-Long Island Jewish Health Sys., Inc.*, 582 F. App'x 70, 71 (2d Cir. 2014) (disability discrimination); *Mihalik*, 715 F.3d at 110 (gender-based discrimination); *LaSalle v. City of New York*, No. 13-CV-5109, 2015 WL 1442376, at *6 (S.D.N.Y. Mar. 30, 2015) (race discrimination). There are no allegations as to any activity or interaction between Odyssey House and Thomson after September of 2011 except her request to return to work and Odyssey

House's denial of her request.[28]  Because Thomson has failed to allege any facts that would illustrate that, after March of 2012 (the date of her NYSDHR complaint, before which her claims are barred by the election of remedies doctrine) she was treated less well than any other Odyssey House employee, even in part, because of her sexual orientation, gender, race or disability, her NYCHRL discrimination claim is dismissed as to Odyssey House.  *See Soloviev v. Goldstein*, --- F. Supp. 3d ---, 2015 WL 2249996, at *11–12 (E.D.N.Y. May 13, 2015) (dismissing NYCHRL when plaintiff failed to allege that termination was caused by discriminatory motive); *LaSalle*, 2015 WL 1442376, at *6 (dismissing NYCHRL race and color discrimination claims when plaintiff "allege[d] no facts from which the Court could determine that she was treated 'less well' than other employees because of her race").

### ii.  Hostile work environment

Under the NYCHRL, a hostile work environment claim is a form of gender discrimination, and analyzed under the same standard — the plaintiff must ultimately show she was treated less well "at least in part '*because of* her gender.'"  *Mihalik*, 715 F.3d at 110 (emphasis in original).  The Court is mindful of the fact that NYCHRL claims must be treated more liberally than those brought under Title VII and the NYSHRL, and that "even a single comment may be actionable in the proper context."  *Mihalik*, 715 F.3d at 113; *see Ardigo v. J. Christopher Capital, LLC*, No. 12-CV-3627, 2013 WL 1195117, at *4 (S.D.N.Y. Mar. 25, 2013); *Olivieri v. Waldbaum, Inc.*, No. 12-CV-1195, 2013 WL 5507141, at *7 (E.D.N.Y. Sept. 30, 2013).  However, Thomson's claims based on the allegations in the March 5, 2012 NYSDHR complaint are barred, as discussed above, and Thomson has presented no allegations as to any of

---

[28]  There is no indication in the TAC that any of the Individual Defendants, who made some remarks about her race, gender and sexual orientation in September of 2011, played a role in Thomson's April 2014 termination.

her interactions with Odyssey House and its employees between that date and the April 2014 termination, and thus her claim cannot survive. *See Olivieri*, 2013 WL 5507141, at *7 (noting that NYCHRL hostile work environment claims must still be "link[ed]" to "some attitude the law forbids" (quoting *Williams v. Metro-North Commuter R.R. Co.,* No. 11-CV-7835, 2012 WL 2367049, at *13 (S.D.N.Y. June 20, 2012))). The Court grants Odyssey House's motion to dismiss the NYCHRL hostile work environment claim based on allegations post-dating the March 5, 2012 NYSDHR complaint.

### iii. Retaliation

"To prevail on a retaliation claim under the NYCHRL, a plaintiff need only show that [s]he 'took an action opposing [her] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" *Gorokhovsky*, 552 F. App'x at 102 (quoting *Mihalik*, 715 F.3d at 112). However, a plaintiff still must allege a causal connection between the employer's action and the plaintiff's conduct, and Thomson has failed to raise a reasonable inference of a causal connection here for substantially the same reasons as discussed above: she has made no allegations regarding her interaction with Odyssey House between September of 2011, when Thomson needed to take leave, and April of 2014, when she was "let go" after asking to return to work. *See Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 217 (E.D.N.Y. 2014) (dismissing NYCHRL when plaintiff failed to allege facts connecting lawsuit in 2009 to actions suffered in 2012, and finding that the temporal proximity was "too attenuated" to sustain an inference of retaliation); *see also Krasner v. City of New York*, 580 F. App'x 1, 3 (2d Cir. 2014) (noting that a defendant is not liable under the NYCHRL if the plaintiff fails to show the conduct was at least partly caused by retaliatory motives). As with her other retaliation claims, Thomson cannot

amend the TAC to include new theories of liability by raising them in opposition to the motion to dismiss, and her theory that the April 2014 termination was retaliation in response to filing this action in state court in September of 2013 is not even implied in the TAC. Thus, Thomson's NYCHRL retaliation claim is dismissed.

### i. Individual Defendants

Plaintiffs bring all of their claims against all Defendants, including the Individual Defendants. For the reasons set forth in part II.c, the Court *sua sponte* dismissed Plaintiffs' NYCHRL and NYSHRL claims against the Individual Defendants for lack of subject matter jurisdiction. Thomson named Brown, Harris and Herbert as Defendants in her March 5, 2012 NYSDHR complaint, and the case was dismissed, finding no probable cause to belief that the respondents engaged in the alleged discriminatory practices. (Determination and Order in Case No. 10153677, at ECF No. 55.) Clark named Brown and Harris in her NYSDHR complaint, and the case was similarly dismissed with a "no probable cause" determination.[29] (Determination and Order in Case No. 10153681, at ECF No. 60.) Plaintiffs' NYSHRL and NYCHRL claims against these Defendants are thus precluded under the election of remedies doctrine.

The Court also dismisses Thomson's Title VII and ADA claims against the Individual Defendants, who may not be held personally liable for those claims, as the Individual Defendants are not alleged to be her employers. *See Littlejohn*, 795 F.3d at 313 ("Title VII 'does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers.'" (quoting *Raspardo*, 770 F.3d at 113); *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010)

---

[29] Clark makes no allegation in the TAC that she had any interaction with Herbert or that Herbert had any involvement in any of the decisions affecting Clark, and thus any NYSHRL claims Clark purports to bring against Herbert that are not jurisdictionally barred by the election of remedies doctrine are dismissed for failure to state a claim. *See Buckley v. New York*, 959 F. Supp. 2d 282, 300 (E.D.N.Y. 2013).

(holding that the anti-retaliation provision of the ADA does not provide for individual liability); *Corr v. MTA Long Island Bus*, No. 98-9417, 1999 WL 980960, at *2 (2d Cir. 1999) (affirming district court's conclusion that there is no right of recovery against individual defendants for employment discrimination in violation of the ADA); *Sherman*, 71 F. Supp. 3d at 343 (concluding that because courts routinely interpret the ADA in line with Title VII, there is no individual liability for employment discrimination claims under Title I of the ADA). Furthermore, while the NYSHRL provides for individual liability under an aiding-and-abetting theory, or against individuals who are also employers, Plaintiffs have made no such allegations against the Individual Defendants with respect to Thomson's claims relating to her April 2014 termination, her only claims not presented to the NYSDHR in the March 5, 2012 complaint. *See Tolbert v. Smith*, 790 F.3d 427, 434 n.3 (2d Cir. 2015) (citing *Feingold*, 366 F.3d at 157–58). Additionally, the Court *sua sponte* dismisses Thomson's remaining NYCHRL claims and Section 1981 retaliation claim against the Individual Defendants for substantially the same reasons as discussed above, including the fact that she has presented no facts about the Individual Defendants' involvement in her April 2014 termination, or about any interaction with them after September of 2011. *See Buckley v. New York*, 959 F. Supp. 2d 282, 300 (E.D.N.Y. 2013) (dismissing hostile work environment claim when there was "no specific allegation made or example proffered of a hostile work environment action by any of the individual [d]efendants").

Almost two years have passed since Plaintiffs filed the Complaint, and, to date, it does not appear that Plaintiffs have properly served any of the Individual Defendants or that service is imminent. (*See* Motion to Compel Defendants' last known addresses, Docket Entry No. 25 (seeking addresses of Individual Defendants in order to effectuate service); Not. of Removal ¶ 11 (indicating that Individual Defendants had not been served in the state proceedings).)

Accordingly, Plaintiffs are ordered to show cause within thirty (30) days of the date of this Memorandum and Order why Clark's Section 1981 retaliation claim, the only claim remaining in this action, should not be dismissed as to the Individual Defendants for failure to timely serve the TAC. *See Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012); *see also Ferran v. Office of the Dist. Att'y*, 598 F. App'x 802, 803 (2d Cir. 2015) (affirming dismissal pursuant to Rule 4(m) when plaintiffs failed to serve process without "colorable justification" and indicated that they did not intend to serve the complaint); *Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007) (affirming Rule 4(m) dismissal when plaintiff "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and has advanced no cognizable excuse for the delay").

## III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Odyssey House's motion to dismiss the claims against it, as follows:

- Thomson's Title VII and ADA claims presented to the EEOC in her March 5, 2012 NYSDHR complaint are barred by the 90-day statute of limitations;

- Consideration of Thomson's Title VII and ADA claims is limited to those arising from her allegations after September 5, 2013, 300 days prior to the date Thomson filed her July 2, 2014 EEOC charge;

- Thomson's NYSHRL and NYCHRL claims and Clark's NYSHRL claims arising out of facts presented to the NYSDHR in the March 5, 2012 NYSDHR complaints are dismissed pursuant to Rule 12(b)(1) under the election of remedies provisions contained in the relevant statutes;

- Thomson's NYCHRL claims premised on facts not presented to the NYSDHR, that is, her April 2014 termination, are dismissed for failure to state a claim;

- Thomson's Title VII and NYSHRL hostile work environment, discrimination and retaliation claims are dismissed for failure to state a claim;

- Thomson's ADA discrimination and retaliation claims are dismissed for failure to state a claim;

- Thomson's Section 1981 claim is dismissed for failure to state a claim; and

- Clark has adequately stated a Section 1981 claim.

The Court *sua sponte* dismisses Thomson's Title VII, ADA, Section 1981 and NYCHRL claims against the Individual Defendants, and dismisses both Plaintiffs' NYSHRL claims against the Individual Defendants. The Court denies Plaintiffs' request for further leave to amend the TAC as Plaintiffs withdrew their request to amend the TAC.[30] The only remaining claim is Clark's Section 1981 retaliation claim against all Defendants. Clark is ordered to show cause within thirty (30) days of the date of this Memorandum and Order why the Court should not dismiss this remaining claim as to Herbert, Brown and Harris for failure to serve the TAC.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 21, 2015
Brooklyn, New York

---

[30] On September 16, 2015, Plaintiffs filed a letter requesting a pre-motion conference, seeking leave to file a motion to consolidate this action with a second action, *Thomson v. Odyssey House* which is pending in the Supreme Court of New York, Kings County, relating to events which "occurred several years after the events in the federal action" and "stem[] from the filing of her federal complaint and second EEOC charge of discrimination." (Docket Entry No. 41.) On September 18, 2015, Defendants opposed the motion. (Docket Entry No. 42.) Given that the Court has dismissed all of Thomson's claims in this action, the Court denies the request for a pre-motion conference as moot.